UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GROVER L. DILLON, SR.,
    Petitioner,

v.                                                                   CIVIL ACTION NO. 12-40082-TSH

JEFFREY GRONDOLSKY,
Warden of Federal Medical Center-Devens,
    Respondent.

## MEMORANDUM AND ORDER

**HILLMAN, D.J.**

    For the reasons stated below, the Court <u>DENIES</u> the petition under 28 U.S.C. § 2241 for a writ of habeas corpus, <u>GRANTS</u> Petitioner's Motion to Supplement Petition (Docket No. 4), and <u>DISMISSES</u> this action.

**I.**     **Introduction**

    On July 2, 2012, Petitioner Grover L. Dillon, Sr. ("Dillon"), a prisoner in custody at FMC Devens in Ayer, Massachusetts, filed a self-prepared petition for writ of habeas corpus under 28 U.S.C. § 2241 ("§ 2241") (Docket No. 1), along with a Memorandum of Law in support (Docket No. 1-1). Dillon challenges both his criminal conviction and his criminal sentence imposed in the United States District Court for the Southern District of West Virginia at Bluefield. *See United States v. Dillon*, 1:98-CR-0140) (David A. Faber, Chief District Judge).

    The background of his criminal case and subsequent proceedings has been summarized by other courts. Culling out the recitations from those opinions, the salient history is as follows.

    A.     <u>The Criminal Case: *United States v. Dillon*, Cr. 1:98-0140 (S.D.W.V.)</u>

    On March 19, 1999, Dillon pled guilty to five counts of mail fraud in violation of 18 U.S.C. § 1341. On July 30, 1999, he was sentenced to a 300–month term of incarceration (60

months on each count, to be served consecutively).

On August 10, 1999, Dillon filed a Notice of Appeal, arguing that the District Court erred: (1) in departing upward from the applicable guideline range based on the finding that he murdered his stepson; (2) in imposing a two-level enhancement for a crime involving a vulnerable victim; and (3) in imposing a two-level enhancement based on the finding that Dillon's fraudulent conduct involved the reckless risk of serious bodily injury. *See United States v. Dillon*, 2000 WL 1288610 at * 1 (4th Cir. 2000) (unpublished decision); *see Dillon v. United States*, 2011 WL 7301569 (S.D.W.Va. 2001) (Proposed Findings and Recommendation [on motion filed pursuant to 28 U.S.C. § 2255]).

On September 13, 2000, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") affirmed Dillon's conviction and sentence. The Fourth Circuit also noted there was ample evidence to support the finding that Dillon murdered Bernie Carter. *See Dillon*, 2000 WL 1288610 at *2.

Thereafter, Dillon filed a petition for writ of certiorari. On April 16, 2001, the United States Supreme Court denied the petition. *See Dillon v. United States*, 532 U.S. 975 (2001).

B.  Post-Conviction Cases Filed Pursuant to Section 2255 of Title 28

On November 1, 1999 (while the direct appeal was pending), Dillon filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 ("§ 2255"). On November 23, 1999, Magistrate Judge Feinberg recommended the motion be denied without prejudice. That recommendation was adopted by the District Court on March 7, 2000, and consequently, the § 2255 motion was dismissed without prejudice. *See Dillon v. United States*, Civil Action No.

1:99-0977.

Ten years later, on March 8, 2010, Dillon filed another motion pursuant to 28 U.S.C. § 2255. *See Dillon v. United States*, Civil Action No. 1:10-0266. In that motion, he alleged that: (1) his guilty plea was involuntary because he was incompetent to stand trial; (2) the District Court erred in failing to determine whether he had read the Presentence Report and discussed it with his counsel prior to sentencing; (3) there was insufficient evidence to support a sentencing enhancement for the death of his stepson, Bernie Carter; and (4) that there was insufficient evidence to support a sentencing enhancement for the reckless endangerment of the lives of Karen Johnson and Maxine Meadows. *See Dillon*, 2011 WL 7301569 at *1.

Thereafter, while his second § 2255 motion was pending, Dillon filed a third § 2255 motion on June 20, 2011. He sought to strike his earlier motion and replace it with a later version dated June 13, 2011. *See Dillon v. United States*, Civil Action No. 1:11-0428. In that third motion, Dillon argued that, notwithstanding his guilty plea, his trial counsel was ineffective in the investigation, trial and sentencing phases of his criminal case. He also alleged bias and perjury by prosecution witnesses who had a self-interest in making false statements before the Grand Jury, as well as bias by the trial judge against him. Additionally, Dillon asserted his guilty plea was not knowing and voluntary because he was on anti-depressant medication at the time of plea, so that his mental faculties were impaired, rendering him incapable of understanding his rights or the consequences of a guilty plea. Further, Dillon challenged his conviction and sentence based on allegations of other crimes for which he was never indicted. Finally, Dillon contested his consecutive sentences on each count, alleging that the mail fraud counts were

groupable offenses, and thus he only should have been sentenced on one count of mail fraud resulting in a maximum sentence of five years. *See Dillon*, 2011 WL 7301569 at *2.

Dillon's § 2255 motions (Civil Action Nos. 1:10-0266 and 1:11-0428). were consolidated by Magistrate Judge VanDervort.[1]  In his proposed Findings and Recommendation, Magistrate Judge VanDervort noted that Dillon's conviction became final on April 16, 2011 when his petition for writ of certiorari was denied by the United States Supreme Court.  His second § 2255 motion was filed seven years and 11 months after the one-year period of limitations set forth in 28 U.S.C. § 2255 (1)-(4) had expired.  Thus, Dillon's § 2255 motion was deemed to be untimely.  After review of the record, Magistrate Judge VanDervort found that there no circumstances that justified equitable tolling of the limitations period; he therefore recommended Dillon's § 2255 motions be denied. *See Dillon*, 2011 WL 7301569 at *4.  Dillon filed Objections to the Magistrate Judge's findings and recommendation.  Those Objections argued why equitable tolling of the limitations period was warranted.

On February 14, 2012, the Report and Recommendation was adopted by Senior District Judge David A. Faber over Dillon's objections. *See Dillon v. United States*, 2012 WL 482341 (S.D.W.Va. 2012).  In addressing Dillon's arguments, Judge Faber rejected Dillon's assertions that he would continue to serve an illegal sentence if relief was not granted, that tolling was warranted because it was unconscionable to enforce his sentence, and that it would perpetuate the miscarriage of justice to which he had already been subjected.  He also rejected Dillon's general

---

[1]On July 11, 2011, Dillon filed another motion to strike his case and replace it with the § 2255 motion dated June 13, 2011.

and conclusory objections of, *inter alia,* ineffective assistance of counsel. In sum, Judge Fabor found that Dillon had failed to show that he pursued his rights diligently and failed to show that some extraordinary circumstance caused him to wait seven years and 11 months past the limitations period before filing his § 2255 motion. In light of this, Judge Faber denied § 2255 relief. *Dillon v. United States,* 2012 WL 482341 at *3.

Thereafter, on March 15, 2012, Dillon filed a petition for writ of mandamus alleging that the District Court had unduly delayed acting on his § 2255 motion. That petition was denied because the District Court had denied the § 2255 motion on February 14, 2012, and thus the petition for mandamus was moot. *See In re Dillon,* 2012 WL 1021859 (4th Cir. Mar. 28, 2012).

Dillon then filed a Motion to Reconsider the denial of his § 2255 motion with the District Court. On April 18, 2012, Judge Faber denied that motion because Dillon had cited no intervening changes in controlling law or brought forth any new evidence. The Court found no clear error of law or manifest injustice, and again rejected Dillon's equitable tolling arguments. Further, the Court rejected Dillon's affidavit stating that he had attempted to file several § 2255 motions that would have been timely filed, but failed to do so. Dillon's purported excuses --that his transcripts were lost, that an individual lied to him about filing his motion, that he sought help of other inmates, and that he was on anti-depressant drugs -- all were rejected by Judge Faber because he determined the circumstances to which Dillon pointed did not rise to the level that would be required to reconsider the untimely § 2255 motions. *See Dillon v. United States,* 2012 WL 1344024 at *1 (S.D.W.Va. Apr. 18, 2012).

C.    <u>The Instant Habeas Petition</u>

Undeterred from his unsuccessful challenges to his conviction and sentence, Dillon has filed the instant habeas petition pursuant to 28 U.S.C. § 2241. He seeks to have his criminal conviction vacated on the ground that his guilty plea was involuntary and unknowing, or, in the alternative, he seeks to be re-sentenced to a term of imprisonment not to exceed five (5) years.

Dillon's grounds for habeas relief are intermingled in his Memorandum in Support. From what can be discerned, in his petition, he separates his claims into six grounds: (1) he had ineffective assistance of counsel during the investigative, trial, and sentencing phases of his criminal case;[2] (2) the prosecution's witnesses were biased and prejudiced and perjured themselves before the Grand Jury because of their own self interest;[3] (3) the trial judge was

---

[2]With respect to his ineffective assistance of counsel claim, Dillon argues, *inter alia*, that his trial attorney misrepresented information pertaining to the plea agreement, that he was induced to sign the agreement, and that counsel advised him and his family that he would only be subjected to a 27 to 33 months sentence if he signed the plea agreement. He contends that had counsel not been ineffective, the result of the criminal proceedings would have been different; he would not have been trapped into pleading guilty. Dillon also alleges that counsel failed to review with him the discovery received from the Government; that he failed to provide defense-related discovery materials to the Government; that counsel failed to file any pretrial motions, such as a motion to suppress, or even to discuss the motion issue with him; that trial counsel failed to keep him updated on important issues in the case; that trial counsel failed to conduct a pre-trial investigation despite the fact that he provided counsel with names of potential defense witnesses to interview; that trial counsel failed to follow-up on information that would have impeached the credibility of Government witnesses; and that trial counsel was under significant financial stress as well as mental and emotional stress stemming from malpractice suits by various clients, rendering him unable to concentrate as a trial attorney and competently represent him in his criminal case.

[3]Concomitant with this argument, Dillon asserts prosecutorial misconduct in knowingly using perjured testimony against him in order to obtain the conviction. He claims that his estranged wife, Josephine Short Dillon, and her family, all testified falsely before the Grand Jury. He also contends his wife held herself out as a licensed health care provider, but was not. She conned him into believing she had expertise in health care for his various medical and mental health problems (heart attacks, diabetes, depression), and she seduced him so that she could

biased against him because the judge had certain personal relationships that would have hindered his ability to be an objective trier of facts, and which warranted his recusal;[4] (4) his guilty plea was not knowing and voluntary because he was on anti-depressants and tranquilizers at the time of the plea and was mentally impaired such that he did not understand or appreciate his rights or the consequences of his plea; (5) he was incorrectly sentenced using Rule 404(b) information of alleged crimes for which he was never indicted and which had no probative value and were prejudicial; (6) his sentence was in violation of law because the trial judge imposed consecutive sentences on each of the five counts despite the fact that the mail fraud statute permits groupable offenses and carries a statutory maximum sentence of five (5) years.[5]

---

marry him and gain access and control over his assets. He claims her family members also were engaged in this type of deceit (seducing men to gain material wealth), and that they were all working as confidential informants for various law enforcement agencies. He further alleges that a key prosecution witness, Kenneth Meadows, confessed at the sentencing that he had perjured himself before the Grand Jury, but his trial counsel failed to utilize this fact in his defense or to challenge the validity of the Indictment against him. Additionally, Dillon claims that this false testimony impacted all phases of his criminal case, and impacted on his place of pretrial incarceration, limiting his ability to contact his family and coordinate a competent defense team.

[4]Dillon claims that District Judge Faber had a long standing relationship with the Chief of Police of Bluefield, West Virginia ("Blizzard."). In the body of his Memorandum in support, Dillon alleges that a family member of his estranged wife ("Libby") had a sexual relationship with Blizzard. Dillon claims that because Libby was also having sexual relations with him, Blizzard was furious with him and sought revenge against him by seeking an arrest, prosecution, and an illegal sentence. He further alleges there was a conspiracy involving his estranged wife Josephine, her sister, Libby, and Blizzard, to accuse him of a heinous crime. This was done in order for the family to gain his assets and in order to eliminate the "love triangle" involving Libby, Dillon, and Blizzard. Further, Dillon claims that Blizzard used his friendship with Judge Faber in order "to put the final nail in the Petitioner's coffin." Memorandum in Support (Docket No. 1-1 at 20).

[5]Dillon also argues that he did not receive any sentence reduction or downward departure for a guilty plea, as is customary in the federal sentencing scheme. He asserts that this is evidence of his involuntary and unknowing guilty plea. Additionally, Dillon argues that he was denied due process at sentencing because his sentenced was based on prejudicial misinformation.

Dillon did not pay the $5.00 filing fee for this habeas petition, nor did he seek a waiver of the filing fee. On July 6, 2012, this Court issued a Procedural Order (Docket No. 3) directing Dillon either to pay the $5.00 filing fee for habeas petitions or file a Motion for Leave to Proceed *in forma pauperis* accompanied by his certified prison account statement in accordance with Rule 3(a)(2) of the Rules Governing Section 2254 Cases (applicable to other habeas petitions at the Court's discretion).

On July 19, 2012, Dillon filed a Motion to Supplement Petition (Docket No. 4) with an incorporated supplement. In that document, Dillon reiterates his claims (*i.e.*, that his guilty plea was not knowing or voluntary, that his sentence was illegal because he should have received no more than five years, and that his trial attorney provided inefficient assistance of counsel during the investigative, trial, and sentencing phases of his case, including plea negotiations). Specifically, Dillon contends that recent cases holding that overlooked sentencing errors in plea negotiations impermissibly taints the plea process and mandates reversal of the conviction.[6]

On July 23, 2012, Dillon paid the $5.00 filing fee to this Court.

---

[6]Dillon cites to *Johnson v. Uribe*, 682 F.3d 1238 (June 22, 2012) (trial counsel's failure to provide effective assistance during the entire plea negotiation stage warranted vacation of guilty plea as the appropriate remedy), *Missouri v. Frye*, 132 S.Ct. 1399 (Mar. 21, 2012) (the Sixth Amendment right to effective assistance of counsel applies to all critical stages of the criminal proceedings, including the entry of a guilty plea as well as the plea-bargaining process), and *Lafler v. Cooper*, 132 S.Ct. 1376 (Mar. 21, 2012) (proper remedy for ineffective assistance of counsel in advising petitioner to reject plea offer was to order the State to re-offer the plea agreement). Notably, *Missouri* involved a review of the denial of a postconviction motion filed in the state court; and both *Johnson* and *Lafler* involved a federal habeas petition under 28 U.S.C. § 2254 after petitioners' state postconviction motions for relief were denied.. None of these cases involved the question of second and successive habeas (or § 2255) petitions and/or the application of the savings clause to invoke § 2241 habeas relief by a federal prisoner.

## II. DISCUSSION

### A. Screening of the Petition

As noted above, although this petition was brought pursuant to Section 2241 and not Section 2254, the rules governing Section 2254 cases may be applied at the discretion of the district court to other habeas petitions. *See* Rule 1(b) of the Rules Governing Section 2254 proceedings; *Boutwell v. Keating*, 399 F.3d 1203, 1211 n.2 (10th Cir. 2005) (district court acted within its discretion by applying Rule 4(b) of the Rules Governing Habeas Corpus Cases Under Section 2254 to § 2241 petition); *Perez v. Hemingway*, 157 F. Supp. 2d 790, 795 (E.D. Mich. 2001).

Under Rule 4 of the Rules Governing Section 2254 proceedings, the Court is required to examine a petition, and if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court," the Court "must dismiss the petition and direct the clerk to notify the petitioner." Rule 4; *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (habeas petition may be dismissed if it appears to be legally insufficient on its face); *Mahoney v. Vondergritt*, 938 F.2d 1490, 1494 (1st Cir. 1991) (upholding Rule 4 summary dismissal of § 2254 petition). A petition for a writ of habeas corpus may also be summarily dismissed if it fails to set forth facts that give rise to a cause of action under federal law. *Marmol v. Dubois*, 855 F. Supp. 444, 446 (D. Mass. 1994); *see Eady v. Director, Charleston County Detention Center*, 2011 WL 3704225, *3 (D.S.C. 2011) *citing Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (noting that federal district courts have a duty to screen habeas petitions and eliminate burden on respondents caused by ordering an unnecessary answer or return), *cert. denied*, 400 U.S. 906 (1970).

Here, this Court will ALLOW Dillon's Motion to Supplement his petition (Docket No. 4). Notwithstanding the Supplement, however, Dillon's habeas petition must be dismissed *sua sponte* for the reasons set forth below.

B.  Dillon May Not Bring a Section 2241 Petition to Challenge His Conviction and/or Sentence

It is well settled that a prisoner seeking to collaterally attack his sentence must assert his claim primarily through a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 before the sentencing court rather than through a § 2241 habeas petition in the district in which he is incarcerated.[7] *United States v. Barrett,* 178 F.3d 34, 50 n.10 (1st Cir. 1999), *cert. denied,* 528 U.S. 1176 (2000); *see Rogers v. United States,* 180 F.3d 349, 357 n.15 (1st Cir. 1999) *cert. denied,* 528 U.S. 1126 (2000) (motion under § 2255 is the "exclusive remedy in the sentencing court for any errors occurring at or prior to sentencing, including construction of the sentence itself."); *Gonzalez v. United States,* 150 F. Supp. 2d 236, 241 (D. Mass. 2001). Section 2255 relief is available when a petitioner demonstrates that his sentence "(1) was imposed in

---

[7]While both provisions of § 2241 and § 2255 authorize challenges to the legality of Dillon's continued federal custody, "[i]t is well established canon of statutory construction that when two statutes cover the same situation, the more specific statute takes precedence over the more general one." *Coady v. Vaughn,* 251 F.3d 480, 484 (3d Cir. 2001) (comparing § 2241 and § 2254 habeas challenges), *citing Edmond v. United States,* 520 U.S. 651, 657 (1997); *Preiser v. Rodriguez,* 411 U.S. 475, 488-489 (1973). The rationale behind this is that under general circumstances, the use of a § 2241 petition rather than a § 2255 motion would serve to circumvent Congress's intent to restrict the availability of second and successive petitions and/or the time limitations for filing a § 2255 motion. *Coady,* 251 F.3d at 484-485. Moreover, § 2255 gives the court more flexibility in fashioning a remedy than a habeas writ. *In Re Hanserd,* 123 F.3d 922, 925 (6th Cir. 1997). Another consideration is that "...inter-district comity and practicality suggest that the original sentencing court is better positioned to reevaluate a federal prisoner's conviction and sentence." *In Re Hansferd,* 123 F.3d at 925. Section 2241 relief is available for a prisoner seeking to challenge the execution of a federal sentence, including computation of a sentence, disciplinary actions, prison transfers, types of detention, and other prison conditions. *Thornton v. Sabol,* 620 F. Supp. 2d 203, 206 (D. Mass. 2009).

violation of the Constitution, or (2) was otherwise subject to collateral attack." *Moreno-Morales v. United States*, 334 F.3d 140, 148 (1st Cir. 2003) (citing *Davis v. United States*, 134 F.3d 470 (1st Cir. 1988)).

In this case, it is clear that § 2255 relief is not available to Dillon, as his numerous prior attempts at such relief (in various forms) have been unavailing. It is likely that he is aware that this avenue of relief is foreclosed to him, and now seeks to assert yet another challenge to his conviction and sentence through a § 2241 habeas petition, presumably under the aegis of the "savings clause" of § 2255.

The savings clause states, in relevant part:

An application for a writ of habeas corpus...shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of detention.

28 U.S.C. § 2255(e).

A § 2255 motion is not "inadequate or ineffective" merely because a petitioner cannot meet the second or successive requirements. *See Barrett*, 178 F.3d 50.[8] Moreover, the savings clause does not apply merely because § 2255 relief has already been denied, or because a petitioner has been denied permission to file a second or successive § 2255 motion, or because a second or successive § 2255 motion has been dismissed, or because the one year period of limitations has expired. *United States v. Lurie*, 207 F.3d 1075, 1077 (8th Cir. 2000). In other

---

[8]*See also, Reyes-Requena v. United States*, 243 F.3d 893, 904 (5th Cir. 2001) (savings clause applies to claims based on a retroactively applicable Supreme Court decisions which establish petitioner may have been convicted of a nonexistent offense and to claims foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or first § 2255 motion).

words, "[t]he remedy in section 2255 does not become 'inadequate or ineffective' simply by virtue of the fact that the prisoner is not able to meet the gate-keeping requirements for second or successive petitions." *Hernandez-Albino v. Haynes*, 368 Fed. Appx. 156, 2010 WL 850191, *1 (1st Cir. 2010) (unpublished decision).

Courts only allow recourse to the savings clause "in rare and exceptional circumstances," such as those where the restrictions on § 2255 motions would result in a "complete miscarriage of justice." *Trenkler v. United States*, 536 F.3d 85, 99 (1st Cir. 2008) (quoting in part *In re Dorsainvil*, 119 F.3d 245, 251 (3d Cir. 1997)). "Most courts have required a credible allegation of actual innocence to access the savings clause." *Id.; see Barrett*, 178 F.3d at 52-53 (discussing availability of § 2241 where a petitioner claims "actual innocence").[9] Further, it is well settled that a petitioner like Dillon, who has exhausted his § 2255 avenues, cannot use the "savings clause" to circumvent the restrictions of § 2255 (such as the restriction on filing second and successive motions absent permission of the appellate court, or the time restrictions on filing) by filing a petition under § 2241 instead. *See Barrett*, 178 F.3d at 50-52 (permitting a petitioner to evade the restrictions of § 2255 by resorting to § 2241 would render those restrictions meaningless); *Nascimento v. United States*, 2012 WL 1004316, *3 (D. Mass. Mar. 22, 2012) (a prisoner "may not circumvent statutory restrictions by filing a habeas petition under § 2241

---

[9] *See Glacken v. Dickhaut*, 585 F.3d 547, 550 (1st Cir. 2009) ("The default may be excused only if the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or else demonstrate that the failure to consider the claim will result in a fundamental miscarriage of justice" and noting that the miscarriage of justice exception is a "'narrow exception to the cause and prejudice imperative seldom to be used, and explicitly tied to a showing of actual innocence.'" quoting *Burks v. Dubois*, 55 F.3d 712 (1st Cir.1995)).

instead of § 2255"); *Cannon v. United States*, 2007 WL 1437704, at *3 (D. R.I. 2007).

Here, Dillon's attempt to obtain § 2241 relief that he could not otherwise obtain under § 2255 is futile. Under the facts and circumstances underlying this case, this Court does not find that Dillon has put forth any exceptional circumstances in this case and/or that there will be a complete miscarriage of justice should § 2241 habeas relief not be granted. In the instant petition, Dillon raises purely legal challenges to his conviction and sentence which are not the type of challenges that can overcome the narrow exception of the savings clause, and which, in any event, have been raised or could have been raised in earlier § 2255 proceedings. He has presented no new discernible factual circumstances nor put forth any relevant legal authority from which this Court reasonably could conclude that § 2255 is an inadequate or ineffective remedy to test the legality of his detention. Of significance is that: (1) Dillon has made prior, unsuccessful attempts for relief from his conviction and sentence; (2) Dillon has introduced claims for relief which were matters that already were raised in his direct appeal and/or § 2255 case (in whole or in part, directly or indirectly), or that otherwise presented matters which could have been raised in his appeal or earlier collateral attacks; and (3) Dillon presents no *bona fide* claim of actual (factual) innocence; rather, his claims regard the sufficiency of the legal evidence and the lack of due process.[10]

---

[10]Although the First Circuit has not fully defined all of the circumstances that might allow a federal prisoner to utilize § 2241 to challenge his detention, the savings clause is to be narrowly interpreted and is very limited in scope. It may only be invoked on rare occasions and under the most exceptional circumstances. *See Barrett*, 178 F.3d at 38 (explaining that a federal prisoner "cannot evade the restrictions of § 2255 by resort to the habeas statute, 28 U.S.C. § 2241, or the All Writs Act, 28 U.S.C. § 1651"). The limited purpose of the savings clause is to allow a petitioner to make a claim based on "actual innocence" (*i.e.* factual innocence) that would otherwise be barred by § 2255, or where a circuit court's meaning of a statute has been overruled by the Supreme Court. *See Charles v. Chandler*, 180 F.3d 753 (6th Cir. 1999); *In re Dorsainvil*,

Moreover, Dillon's primary argument -- that his constitutional claims should be considered on the merits notwithstanding the untimeliness of his § 2255 petitions so as to avoid a miscarriage of justice -- is contrary to the established law discussed above. *See Trenkler*, 536 F.3d at 96 (in enacting the Antiterrorism and Effective Death Penalty Act, Congress severely limited a petitioner's right of review under § 2255); *see generally Delaney v. Matesanz*, 264 F.3d 7, 12 (1st Cir. 2001) (the one-year limitations period does not offend the Suspension Clause). To hold otherwise and allow Dillon's § 2241 petition to proceed would not only be an extraordinarily broad reading of the savings clause contrary to established law in this Circuit, but would render the statutory limitations period virtually meaningless.

In evaluating Dillon's arguments, this Court has considered that judges of this Court and the United States Court of Appeals for the First Circuit ("First Circuit") have held that purely legal challenges (*i.e.,* challenges to the constitutional validity of a conviction as opposed to factual, actual innocence challenges) may not be raised in the § 2241 arena through the savings clause of § 2255. *See, e.g., Burgess v. Grondolsky,* Civil Action No. 11-12293-NMG; *Carrera v. Grondolsky,* Civil Action No. 11-40028-JLT (appeal pending, No. 12-1516 (1st Cir. 2012)); *Bratt v. United States*, Civil Action No. 08-40018-NMG; *Cardona v. United States of America,*

---

119 F.3d 245, 251 (3d Cir. 1997); *Jaramillo v. Winn*, 2002 WL 1424579 (D. Mass. 2002). *See also Sustache-Rivera v. United States*, 221 F.3d 8, 16 (1st Cir. 2000) (the savings clause has most often been used where a Supreme Court decision has overruled the circuit courts as to the meaning of a statute, and the prisoner asserts he is not guilty within the new meaning of the statute); *Reyes-Requena v. United States*, 243 F.3d 893, 904 (5th Cir. 2001) (savings clause applies to claims based on a retroactively applicable Supreme Court decisions which establish petitioner may have been convicted of a nonexistent offense and to claims foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or first § 2255 motion); *Goldman v. Winn*, 565 F. Supp. 2d 200, 212 (D. Mass. 2008) (§ 2241 habeas relief is available for a federal prisoner asserting a claim on actual factual innocence, not mere legal insufficiency).

Civil Action No. 07-40253-DPW; *Black v. Sabol*, Civil Action No. 07-40309-RGS; *Black v. Winn*, Civil Action No. 05-40150-NG *aff'd Black v. Winn*, No. 06-1228 (1st Cir. 2006).

Finally, Dillon's reliance on *Johnson, Missouri*, and *Lafler, supra*, as set forth in his Supplement (Docket No. 4), do not alter the analysis. Those cases simply expound on the right to ineffective assistance of counsel during the plea process, but they do not provide legal support for Dillon as a means ignore the limitations of § 2255.

In sum, Dillon's habeas claims challenging both his conviction and sentence, are, in legal effect, § 2255 claims *"masquerading"* in the guise of a § 2241 petition. *See Boyd v. United States*, 2009 WL 559930 (D.R.I. 2009) ("[W]hen construing a motion for postconviction relief...'courts must be guided by the precept that substance trumps form...'"). The District Court has no jurisdiction to entertain a second or successive habeas petition.

Accordingly, for all of the reasons set forth herein, Dillon's § 2241 habeas petition will be DENIED and this action shall be DISMISSED. Should Dillon seek to assert challenges to his criminal conviction or sentence he must first obtain permission to bring a second or successive § 2255 motion from the appropriate court of appeals.[11]

### III. CONCLUSION

Based on the foregoing it is hereby Ordered that:

1. Petitioner's Motion to Supplement Petition (Docket No. 4) is ALLOWED;

2. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (including the Supplemental petition) is DENIED; and

---

[11] Section 2255 provides restrictions on the ability to bring second or successive petitions in the district court, and requires that "[a] second or successive petition must be certified as provided in section 2244 by a panel of the appropriate court of appeals." 28 U.S.C. § 2255.

3. This action is DISMISSED it its entirety.

SO ORDERED.

7/31/12
DATE

/s/ Timothy S. Hillman
TIMOTHY S. HILLMAN
UNITED STATES DISTRICT JUDGE